**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| DAEDALUS PRIME LLC, | |
| *Plaintiff*, | Civil Action No. 7:25-CV-00413 |
| v. | **JURY TRIAL DEMANDED** |
| MARVELL TECHNOLOGY, INC. | |
| *Defendant*. | |

**COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES**
**AND DEMAND FOR JURY TRIAL**

Plaintiff Daedalus Prime LLC ("Daedalus" or "Plaintiff") files this Complaint for Patent Infringement and Damages ("Complaint") against Marvell Technology, Inc. ("Marvell" or "Defendant") and alleges as follows:

**INTRODUCTION**

1.      The novel inventions disclosed in U.S. Patent Nos. 10,372,197 (the "'197 Patent"); 10,705,960 (the "'960 Patent"); 10,725,919 (the "'919 Patent"); 8,769,316 (the "'316 Patent"); 8,775,833 (the "'833 Patent"); and 8,984,228 (the "'228 Patent") (collectively, the "Asserted Patents") in this matter were invented by Intel Corporation ("Intel"). Intel pioneered the field of microprocessor and semiconductor chip technology. This technology provides capabilities that are crucial to data center products and electronic devices such as personal computers and smartphones. Every year, Intel spends billions of dollars on research and development to invent, market, and sell new technology, and Intel obtains patents on many of the novel inventions that come out of that work, including the Asserted Patents.

## THE PARTIES

2.      Plaintiff is the current owner and assignee of the Asserted Patents.

3.      Plaintiff is a Delaware limited liability company with its principal place of business located at 75 South Riverside Avenue, Unit B/C, Croton-on-Hudson, New York 10520.

4.      On information and belief, Defendant Marvell Technology, Inc. ("Marvell") is a limited liability company organized and existing under the laws of Delaware. Marvell may be served with process through its registered agent, Cogency Global Inc., 850 New Burton Road, Suite 201, Dover, Delaware 19904.

5.      On information and belief, Defendant has one or more regular established places of business in the Western District of Texas ("District"), including at least at 5113 Southwest Pkwy., Travis Oaks Building, 350, Austin, Texas 78735; 9601 Amberglen Blvd., Suite 250, Austin, Texas 78729; 807 Las Cimas Pkwy., Austin, Texas 78746.

6.      On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in this District and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION

7.      This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. Accordingly, this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331 and 1338(a).

8.      Marvell designs and sells semiconductors and/or processors that are used in mobile phones and data centers in the United States. For example, upon information and belief, Marvell designs and sells the Octeon 10 DPU in the U.S.[1]



**Marvell OCTEON 10 DPU Platform**

DPU family designed for demanding cloud, 5G wireless, enterprise, carrier and datacenters applications

**Overview**

Industry's first processor family based on 5nm ARM Neoverse N2 platform: OCTEON 10 DPU family is built on TSMC's 5nm process and incorporates 64-bit ARM Neoverse N2 cores. This technology combination enables 3x jump in compute performance (SPECint/Core/GHz) and 50% reduction in power over previous generation of OCTEON DPUs.

Delivering Superior Performance with innovative Hardware Acceleration Engines: OCTEON 10 sets new standards for power, control and dataplane acceleration with integrated 1 Terabit switch, true inline crypto and highly programmable

packet processing. Datapath and security workloads performance ranges from power optimized 50G to 140G. Hardware based ML engine delivers 100x performance gains over software processing. VPP based hardware accelerators improve packet processing rate by up to 5x.

High Speed I/O: OCTEON 10 family supports advanced I/O interfaces including DDR5, PCIe 5.0, and highly optimized silicon proven 56G SerDes.

9.      This Court has personal jurisdiction over Marvell at least because Marvell designs, sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Western District of Texas, and Marvell has committed, and continues to commit, acts of infringement in the Western District of Texas, has conducted business in the Western District of Texas, and/or has engaged in continuous and systematic activities in the Western District of Texas.

---

[1]   https://www.marvell.com/content/dam/marvell/en/public-collateral/embedded-processors/marvell-octeon-10-dpu-platform-product-brief.pdf.

10.     Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Marvell at least because Marvell has committed acts of infringement within this judicial district giving rise to this action.

11.     On information and belief, Defendant or Defendant's subsidiaries have physical facilities and employees in Texas, including the Western District of Texas.

12.     On information and belief, Defendant or Defendant's subsidiaries maintain multiple offices in Texas. On information and belief, Marvell was first registered to do business in the State of Texas on March 3, 2003,[2] and has maintained offices in Texas since then.

13.     On information and belief, Defendant or Defendant's subsidiaries have numerous employees and job postings in this District specialized in semiconductor design:

---

[2] *See* https://mycpa.cpa.state.tx.us/coa/search.do (search for "Marvell" under "Entity Name") (last visited August 20, 2025

---

**Principal Verification Engineer**

◉ Austin, TX

🕐 Posted 5 Days Ago

2501493

---

**Advanced Packaging Thermal Engineer**

◉ Austin, TX

🕐 Posted 8 Days Ago

2500931

---

**Advanced Package Technology Engineer, Senior Staff**

◉ Austin, TX

🕐 Posted 8 Days Ago

2500918

---

**Principal Package Design Engineer**

◉ Austin, TX

🕐 Posted 12 Days Ago

2500655

---

**Advanced Package Signal and Power Integrity Principal Engineer**

◉ Austin, TX

🕐 Posted 14 Days Ago

2500933

---

https://marvell.wd1.myworkdayjobs.com/MarvellCareers?Country=bc33aa3152ec42d4995f4791a106ed0
9&Location=65dea26481d001b614a8e62952176433&jobFamilyGroup=65dea26481d0016bd6c014dd981
75a01&jobFamilyGroup=65dea26481d001dd99420ddd98172c01

## **THE ASSERTED PATENTS**

14.     The Intel inventions contained in the Asserted Patents in this case relate to

groundbreaking improvements to microprocessor circuitry, and have applications in important

products in data processing and artificial intelligence applications.

## U.S PATENT NO. 10,372,197

15.    On August 6, 2019, the United States Patent Office duly and legally issued the '197 Patent, entitled "User Level Control of Power Management Policies." See Appendix A.

16.    Daedalus is the owner and assignee of all right, title, and interest in and to the '197 Patent, including the right to assert all causes of action arising under the '197 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

17.    The '197 Patent describes, among other things, a multicore processor comprising a power controller that receives a workload configuration input and a plurality of energy performance bias values, determines a global energy performance bias value to update one or more power settings of one or more management features. '197 Patent, Fig. 4, 6:61-7:14; 7:55-8:4.

18.    The novel features of the invention are recited in the claims. For example, Claim 1 of the '197 Patent recites:

1. A processor comprising:

a plurality of cores;

a cache memory;
an interconnect to couple the plurality of cores and the cache memory; and

a power controller to control a plurality of power management features of the processor, wherein the power controller includes a tuning circuit to receive a workload configuration input regarding a workload, receive a plurality of energy performance bias (EPB) values and determine a global EPB value based thereon, and update at least one setting of at least one of the plurality of power management features based on the workload configuration input and the global EPB value.

*Id.* at Cl. 1.

19.    Figure 4 of the '197 Patent, reproduced below, is a block diagram of a processor in accordance with an embodiment of the inventions disclosed in the '197 Patent. As shown in Figure 4, processor 300 may be a multicore processor including a plurality of cores 310a-31. The various

cores may be coupled via an interconnect 315 to a system agent or uncore 320 that includes various components. The uncore 320 may include a shared cache 330 which may be a last level cache. In addition, the uncore may include a power control unit 355.



FIG. 4

*Id.* at Fig. 4.

## U.S PATENT NO. 10,705,960

20.    On July 7, 2020, the United States Patent Office duly and legally issued the '960 Patent, entitled "Processors Having Virtually Clustered Cores and Cache Slices." See Appendix B.

21.    Daedalus is the owner and assignee of all right, title, and interest in and to the '960 Patent, including the right to assert all causes of action arising under the '960 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

22.    The '960 Patent describes, among other things, a multicore processor comprising first level caches and one higher level distributed cache. '960 Patent, Abstract; Fig. 1.

23.    The novel features of the invention are recited in the claims. For example, Claim 1 of the '960 Patent recites:

1. A system comprising:

> a plurality of cores, the plurality of cores comprising symmetric multi-threaded cores;

> a cache subsystem, the cache subsystem comprising a plurality of first level caches and at least one higher level distributed cache comprising a plurality of distributed cache portions that are physically distributed across a die and shared by the plurality of cores, each first level cache integral to one of the plurality of cores and each distributed cache portion accessible to each of the plurality of cores;

> cache management circuitry operative to provide coherent, non-uniform access to the plurality of distributed cache portions by the plurality of cores;

> power management circuitry operative to enable a first frequency of operation for a first cluster of the plurality of cores which are physically proximate to one another and a second frequency of operation for a second cluster of the plurality of cores which are physically proximate to one another, wherein an average distance between cores in the first cluster is less than an average distance between the plurality of cores, the power management circuitry operative to selectively gate power to the first cluster of the plurality of cores and distributed cache portions of the at least one higher level distributed cache that correspond to the first cluster and/or the second cluster of the plurality of cores and distributed cache portions of the at least one higher level distributed cache that correspond to the second cluster;

> a first integrated memory controller coupled with the symmetric multi-threaded cores; and

> a second integrated memory controller coupled with the symmetric multi-threaded cores.

*Id.* at Cl. 1.

24.    Figure 1 of the '960 Patent, reproduced below, is a block diagram of a processor in accordance with an embodiment of the inventions disclosed in the '960 Patent. As shown in Figure 1, processor 101 may be a multicore processor including a plurality of cores 102-1 through 102-N. Each core has access to a lower level cache 104-1 through 104-N and shares a shared higher level cache 105. *Id.* at 3:54-4:12.



*Id.* at Fig. 1.

<u>**U.S PATENT NO. 10,725,919**</u>

25.    On July 28, 2020, the United States Patent Office duly and legally issued the '919 Patent, entitled "Processors Having Virtually Clustered Cores and Cache Slices." See Appendix C.

26.    Daedalus is the owner and assignee of all right, title, and interest in and to the '919 Patent, including the right to assert all causes of action arising under the '919 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

27.    The '919 Patent describes, among other things, a multicore processor comprising first level caches and one higher level distributed cache. '919 Patent, Abstract; Fig. 1.

28.     The novel features of the invention are recited in the claims. For example, Claim 1

of the '919 Patent recites:

> 1. A processor comprising:
>
>> a plurality of cores, the plurality of cores comprising symmetric multi-threaded cores;
>>
>> a cache subsystem, the cache subsystem comprising a plurality of first-level caches and at least one higher-level distributed cache comprising a plurality of distributed cache portions that are physically distributed across a die and shared by the plurality of cores, each first-level cache integral to one of the plurality of cores and each distributed cache portion accessible to each of the plurality of cores;
>>
>> cache management circuitry operative to provide coherent, non-uniform access to the plurality of distributed cache portions by the plurality of cores; and
>>
>> power management circuitry operative to enable a first frequency of operation for a first cluster of the plurality of cores which are physically proximate to one another and a second frequency of operation for a second cluster of the plurality of cores which are physically proximate to one another, wherein an average distance between cores in the first cluster is less than an average distance between all of the cores, the power management circuitry operative to selectively gate power to the first cluster of the plurality of cores and distributed cache portions of the at least one higher-level distributed cache that correspond to the first cluster and/or the second cluster of the plurality of cores and distributed cache portions of the at least one higher-level distributed cache that correspond to the second cluster.

*Id.* at Cl. 1.

29.     Figure 1 of the '919 Patent, reproduced below, is a block diagram of a processor in

accordance with an embodiment of the inventions disclosed in the '919 Patent. As shown in Figure

1, processor 101 may be a multicore processor including a plurality of cores 102-1 through 102-

N. Each core has access to a lower level cache 104-1 through 104-N and shares a shared higher

level cache 105. *Id.* at 3:54-4:12.



FIG. 1

*Id.* at Fig. 1.

## U.S PATENT NO. 8,769,316

30.     On July 1, 2014, the United States Patent Office duly and legally issued the '316 Patent, entitled "Dynamically Allocating a Power Budget Over Multiple Domains of a Processor." See Appendix D.

31.     Daedalus is the owner and assignee of all right, title, and interest in and to the '316 Patent, including the right to assert all causes of action arising under the '316 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

32.     The '316 Patent describes, among other things, a method for determining a power budget for a multi-domain processor. '316 Patent, Abstract; Fig. 1.

33. The novel features of the invention are recited in the claims. For example, Claim 8 of the '316 Patent recites:

> 8. A method comprising:
>
>> determining, in a power controller of a multi-domain processor, a power budget for the multi-domain processor for a current time interval, the multi-domain processor including at least a first domain and a second domain;
>>
>> determining, in the power controller, a portion of the power budget to be allocated to the first and second domains, including allocating a minimum reservation value to the first domain and a minimum reservation value to the second domain, and sharing a remaining portion of the power budget according to a first sharing policy value for the first domain and a second sharing policy value for the second domain; and
>>
>> controlling a frequency of the first domain and a frequency of the second domain based on the allocated portions.

*Id.* at Cl. 8.

34. Figure 1 of the '316 Patent, reproduced below, is a flow diagram of a method of performing power budget allocations in accordance with an embodiment of the inventions disclosed in the '316 Patent. *Id.* at 5:11-59.



FIG. 1

*Id.* at Fig. 1.

<u>**U.S PATENT NO. 8,775,833**</u>

35.    On July 8, 2014, the United States Patent Office duly and legally issued the '833

Patent, entitled "Dynamically Allocating a Power Budget Over Multiple Domains of a Processor."

See Appendix E.

36.     Daedalus is the owner and assignee of all right, title, and interest in and to the '833 Patent, including the right to assert all causes of action arising under the '833 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

37.     The '833 Patent describes, among other things, a method for determining a power budget for a multi-domain processor for a current time interval, determining a portion of the power budget to be allocated to first and second domains of the processor, and controlling a frequency of the domains based on the allocated portions. '833 Patent, Abstract.

38.     The novel inventions of the '833 Patent are recited in the claims. For example, Claim 13 of the '833 Patent recites:

> 13. A system comprising:
>
> > a multicore processor having a first domain including a plurality of cores, a second domain including a graphics engine, and a third domain including system agent circuitry, the third domain to operate at a fixed power budget and including a power sharing logic to dynamically allocate a variable power budget between the first and second domains based at least in part on a first power sharing value for the first domain stored in a first storage and a second power sharing value for the second domain stored in a second storage; and
> >
> > a dynamic random access memory (DRAM) coupled to the multicore processor.

*Id.* at Cl. 13.

39.     Figure 8 of the '833 Patent, reproduced below, shows a block diagram of a system of one embodiment of the claimed invention. "As shown in FIG. 8, multiprocessor system **500** is a point-to-point interconnect system, and includes a first processor **570** and a second processor **580** coupled via a point to-point interconnect **550**[,]" and "each of processors **570** and **580** may be multicore processors." *Id.* at 10:31-36. The system also includes a memory **532** and a memory **534**, "which may be portions of system memory (e.g, DRAM) locally attached to the respective processors." *Id.* at 10:49-50. The system also includes a high performance graphics engine 538. *Id.* at 10:55-57.



FIG. 8

*Id.* at Fig. 8.

## U.S PATENT NO. 8,984,228

40.    On March 17, 2015, the United States Patent Office duly and legally issued the '282 Patent, entitled "Providing Common Caching Agent for Core and Integrated Input/Output (IO) Module." See Appendix F.

41.    Daedalus is the owner and assignee of all right, title, and interest in and to the '228 Patent, including the right to assert all causes of action arising under the '228 Patent and the right to sue and obtain any remedies for past, present, or future infringement.

42.    The '228 Patent describes, among other things, a multicore processor having a plurality of cores, a shared cache memory, an integrated input/output module to interface between

the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the integrated input/output module. '228 Patent, Abstract. As the '228 Patent explains, "problems arise once an IO component is integrated on the same chip with a multiprocessor. Traditional IO integration treats the IO component as a separate caching agent, meaning that dedicated logic is associated with the IO component to handle cache coherency operations. When an IO agent is performing read/write operations to main memory, it has to snoop the CPU side cache to maintain cache coherency." *Id*. at 1:19-25. The integrated input/output module, however, "reduces the amount of snoop traffic needed since a reduced number of caching agents per system can be realized." *Id*. at 3:8-9.

43.     The novel features of the invention are recited in the claims. For example, Claim 1 of the '228 Patent recites:

> 1. An apparatus comprising:
>
>     a multicore processor including a plurality of cores, a shared cache memory, an integrated input/output (IIO) module to interface between the multicore processor and at least one IO device coupled to the multicore processor, and a caching agent to perform cache coherency operations for the plurality of cores and the IIO module, the caching agent a single caching agent for the multicore processor and including a plurality of distributed portions each associated with a corresponding one of the plurality of cores.

*Id.* at Cl. 1.

44.     Figure 6 of the '228 Patent, reproduced below, shows a block diagram of a portion of a system of one embodiment of the claimed invention. As shown in Figure 6, "processor **700** includes a distributed configuration having partitions or slices each including a core **710** and a partition of a caching agent **715** and a LLC **720**. Note that while distributed caching agents are shown, understand that these distributed portions form a single caching agent, and which is

configured to handle cache coherency operations both for the cores as well as an IIO module **750**."
*Id*. at 6:23-29.



FIG. 6

*Id.* at Fig. 6.

## **FIRST COUNT**

### **(Infringement of U.S Patent No. 10,372,197)**

45.    Daedalus incorporates by reference the allegations set forth in Paragraphs 1-63 of the Complaint as though fully set forth herein.

46.    The claims of the '197 Patent are valid and enforceable.

47.    On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '197 Patent, including at least Claim 1 of the '197 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing

into the United States products that embody one or more of the inventions claimed in the '197 Patent, including but not limited to products including Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit A.

48.     Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 1 of the '197 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

49.     The Accused Products directly infringe at least Claim 1 of the '197 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 1 of the '197 Patent, or, alternatively, was willfully blind to the infringement.

50.     On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 1 of the '197 Patent, or, alternatively, was willfully blind to the infringement.

51.     On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '197 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '197 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

52.     Marvell is not licensed or otherwise authorized to practice the claims of the '197 Patent.

53.     Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '197 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

54.     At a minimum, Marvell has knowledge of the '197 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '197 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

55.     As a result of Marvell's infringement of the '197 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

56.     On information and belief, Marvell will continue to infringe the '197 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '197 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## SECOND COUNT

### (Infringement of U.S Patent No. 10,705,960)

57.    Daedalus incorporates by reference the allegations set forth in Paragraphs 1-56 of the Complaint as though fully set forth herein.

58.    The claims of the '960 Patent are valid and enforceable.

59.    On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '960 Patent, including at least Claim 1 of the '960 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '960 Patent, including but not limited to Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit B.

60.    Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 1 of the '960 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

61.    The Accused Products directly infringe at least Claim 1 of the '960 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 1 of the '960 Patent, or, alternatively, was willfully blind to the infringement.

62.    On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 1 of the '960 Patent, or, alternatively, was willfully blind to the infringement.

63.    On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '960 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '960 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

64.    Marvell is not licensed or otherwise authorized to practice the claims of the '960 Patent.

65.    Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '960 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

66.    At a minimum, Marvell has knowledge of the '960 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '960 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award

of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

67.     As a result of Marvell's infringement of the '960 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

68.     On information and belief, Marvell will continue to infringe the '960 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '960 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## THIRD COUNT

## (Infringement of U.S Patent No. 10,725,919)

69.     Daedalus incorporates by reference the allegations set forth in Paragraphs 1-68 of the Complaint as though fully set forth herein.

70.     The claims of the '919 Patent are valid and enforceable.

71.     On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '919 Patent, including at least Claim 1 of the '919 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '919 Patent, including but not limited to Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit C.

72.     Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 1 of the '919 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

73.    The Accused Products directly infringe at least Claim 1 of the '919 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 1 of the '919 Patent, or, alternatively, was willfully blind to the infringement.

74.    On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 1 of the '919 Patent, or, alternatively, was willfully blind to the infringement.

75.    On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '919 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '919 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

76.    Marvell is not licensed or otherwise authorized to practice the claims of the '919 Patent.

77.    Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '919 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

78.    At a minimum, Marvell has knowledge of the '919 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '919 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

79.    As a result of Marvell's infringement of the '919 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

80.    On information and belief, Marvell will continue to infringe the '919 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '919 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## **FOURTH COUNT**

### **(Infringement of U.S Patent No. 8,769,316)**

81.    Daedalus incorporates by reference the allegations set forth in Paragraphs 1-80 of the Complaint as though fully set forth herein.

82.    The claims of the '316 Patent are valid and enforceable.

83.    On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '316 Patent, including at

least Claim 8 of the '316 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '316 Patent, including but not limited to Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit D.

84.    Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 8 of the '316 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

85.    The Accused Products directly infringe at least Claim 8 of the '316 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 8 of the '316 Patent, or, alternatively, was willfully blind to the infringement.

86.    On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 8 of the '316 Patent, or, alternatively, was willfully blind to the

infringement.

87.     On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 8 of the '316 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '316 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

88.     Marvell is not licensed or otherwise authorized to practice the claims of the '316 Patent.

89.     Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '316 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 8.

90.     At a minimum, Marvell has knowledge of the '316 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '316 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

91.     As a result of Marvell's infringement of the '316 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

92.     On information and belief, Marvell will continue to infringe the '316 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '316 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at

law, unless enjoined by this Court.

## FIFTH COUNT

## (Infringement of U.S Patent No. 8,775,833)

93.    Daedalus incorporates by reference the allegations set forth in Paragraphs 1-92 of the Complaint as though fully set forth herein.

94.    The claims of the '833 Patent are valid and enforceable. In particular, the '833 Patent underwent an *inter parte* review, where the Patent Trial and Appeal Board (PTAB) found that the petitioner failed to establish the unpatentability of Claims 14, 15, 17 and 18. IPR2023-01335, Paper 27.

95.    On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '833 Patent, including at least Claim 14 of the '833 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing into the United States products that embody one or more of the inventions claimed in the '833 Patent, including but not limited to products including Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit E.

96.    Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 14 of the '833 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

97.    The Accused Products directly infringe at least Claim 14 of the '833 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way

by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 14 of the '833 Patent, or, alternatively, was willfully blind to the infringement.

98.     On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 14 of the '833 Patent, or, alternatively, was willfully blind to the infringement.

99.     On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 14 of the '833 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '833 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

100.     Marvell is not licensed or otherwise authorized to practice the claims of the '833 Patent.

101.    Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '833 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 14.

102.    At a minimum, Marvell has knowledge of the '833 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '833 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

103.    As a result of Marvell's infringement of the '833 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

104.    On information and belief, Marvell will continue to infringe the '833 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '833 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## SIXTH COUNT

## (Infringement of U.S Patent No. 8,984,228)

105.    Daedalus incorporates by reference the allegations set forth in Paragraphs 1-104 of the Complaint as though fully set forth herein.

106.    The claims of the '228 Patent are valid and enforceable.

107.    On information and belief, in violation of 35 U.S.C. § 271(a), Marvell has directly infringed and continues to directly infringe one or more claims of the '228 Patent, including at least Claim 1 of the '228 Patent, in the state of Texas, in this judicial district, and elsewhere in the United States by, among other things, making, using, selling, offering for sale, and/or importing

into the United States products that embody one or more of the inventions claimed in the '228 Patent, including but not limited to Marvell's microprocessor products including Octeon 10, and all reasonably similar products (the "Accused Products"). See Exhibit F.

108.    Further, on information and belief, Marvell has actively induced and/or contributed to infringement of at least Claim 1 of the '228 Patent in violation of at least 35 U.S.C. § 271(b) and (c).

109.    The Accused Products directly infringe at least Claim 1 of the '228 Patent. On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) include, without limitation and with specific intent to encourage infringement, knowingly inducing consumers to use the Accused Products within the United States in the ordinary, customary, and intended way by, directly or through intermediaries, supplying the Accused Products to consumers within the United States and instructing and encouraging such customers to use the Accused Products in the ordinary, customary, and intended way, which Marvell knew infringes at least Claim 1 of the '228 Patent, or, alternatively, was willfully blind to the infringement.

110.    On information and belief, Marvell's inducements in violation of 35 U.S.C. § 271(b) further include, without limitation and with specific intent to encourage the infringement, knowingly inducing customers to commit acts of infringement with respect to the Accused Products within the United States, by, directly or through intermediaries, instructing and encouraging such customers to import, make, use, sell, offer to sell, or otherwise commit acts of infringement with respect to the Accused Products in the United States, which Marvell knew infringes at least Claim 1 of the '228 Patent, or, alternatively, was willfully blind to the infringement.

111.    On information and belief, in violation of 35 U.S.C. § 271(c), Marvell's contributory infringement further includes offering to sell or selling within the United States, or importing into the United States, components of the patented invention of at least Claim 1 of the '228 Patent, constituting a material part of the invention. On information and belief, Marvell knows and has known the same to be especially made or especially adapted for use in an infringement of the '228 Patent, and such components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

112.    Marvell is not licensed or otherwise authorized to practice the claims of the '228 Patent.

113.    Thus, by its acts, Marvell has injured Daedalus and is liable to Daedalus for directly and/or indirectly infringing one or more claims of the '228 Patent, whether literally or under the doctrine of equivalents, including without limitation Claim 1.

114.    At a minimum, Marvell has knowledge of the '228 Patent at least as of the filing of this Complaint. Accordingly, Marvell's infringement of the '228 Patent has been and continues to be deliberate, intentional, and willful, and this is therefore an exceptional case warranting an award of enhanced damages and attorneys' fees and costs pursuant to 35 U.S.C. §§ 284 and 285.

115.    As a result of Marvell's infringement of the '228 Patent, Daedalus has suffered monetary damages, and seeks recovery, in an amount to be proven at trial, adequate to compensate for Marvell's infringement, but in no event less than a reasonable royalty with interest and costs.

116.    On information and belief, Marvell will continue to infringe the '228 Patent unless enjoined by this Court. Marvell's infringement of Plaintiff's rights under the '228 Patent will continue to damage Daedalus, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all issues triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and seeks relief from Marvell as follows:

117.    For judgment that Marvell has infringed and continues to infringe the claims of the Asserted Patents;

118.    For a permanent injunction against Marvell and its respective officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all other acting in active concert therewith from infringement of the Asserted Patents;

119.    For an accounting of all damages sustained by Plaintiff as a result of Marvell's acts of infringement;

120.    For a mandatory future royalty payable on each and every future sale by Marvell of a product that is found to infringe one or more of the Asserted Patents and on all future products which are not more than colorably different from products found to infringe;

121.    For a judgment and order finding that Marvell's infringement is willful and awarding to Plaintiff enhanced damages pursuant to 35 U.S.C. § 284;

122.    For a judgment and order requiring Marvell to pay Plaintiff's damages, costs, expenses, and pre- and post-judgment interest for its infringement of the Asserted Patents as provided under 35 U.S.C. § 284 and without limitation under 35 U.S.C. § 287;

123.    For a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees; and

124.    For such other and further relief in law and in equity as the Court may deem just and proper.

Dated: September 8, 2025

Respectfully Submitted,

*/s/ Garland Stephens*
Garland Stephens
LEAD ATTORNEY
Texas Bar No. 24053910
garland@bluepeak.law
John Brinkmann
Texas Bar No. 24068091
john@bluepeak.law
Richard Koehl
Texas Bar No. 24115754
richard@bluepeak.law
Robert Magee
California Bar No. 271443
(to be admitted *pro hac vice*)
robert@bluepeak.law
Heng Gong
New York Bar No. 4930509
(to be admitted *pro hac vice*)
heng@bluepeak.law
**BLUE PEAK LAW GROUP LLP**
3139 West Holcombe Blvd, PMB 8160
Houston, TX  77025
Telephone: 281-972-3036

Of Counsel:

Mark D. Siegmund
State Bar No. 24117055
**CHERRY JOHNSON SIEGMUND
JAMES PC**
Bridgeview Center
7901 Fish Pond Road, 2nd Floor
Waco, Texas   76710
Telephone:  (254) 732-2242
Facsimile:   (866) 627-3509
msiegmund@cjsjlaw.com

and

William D. Ellerman
Texas Bar No. 24007151
**CHERRY JOHNSON SIEGMUND
JAMES PC**
One Glen Lakes Tower
8140 Walnut Hill Lane, Suite 105
Dallas, Texas 75231
Telephone: (254) 732-2242
Facsimile: (866) 627-3509
Email: wellerman@cjsjlaw.com

*Attorneys for Plaintiff Daedalus Prime LLC*